IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CANTU SERVICES, INC.,                        )
a Texas corporation,                         )
                                             )
                Plaintiff,                   )
                                             )
v.                                           )        No.  CIV-12-129-R
                                             )
JAMES KEVAN WORLEY; and                      )
BLACKSTONE CONSULTING, INC.,                 )
                                             )
                Defendants.                  )

## ORDER

Before the Court is Plaintiff Cantu Services, Inc.'s ("Cantu") Motion to Reconsider, Doc. No. 80. Defendant Blackstone Consulting, Inc. ("BCI") filed a Response in Opposition, Doc. No. 81, and Plaintiff filed a Reply in Support of its Motion. Doc. No. 82.

Pursuant to its food service contract at the U.S. Army post in Fort Sill, Oklahoma—under the Randolph Sheppard Act, 20 U.S.C. § 107[1]—Mr. A. B. Swanson, the blind manager chosen by the state licensing agency, contracted out "management services and administrative support" from Cantu. Doc. No. 1, ¶ 13. Swanson eventually sought to disengage Cantu from its contractual relationship, and Cantu alleges that BCI intentionally interfered and persuaded Swanson to remove Cantu. Doc. No. 1, ¶¶ 45–47. Accordingly, Cantu filed suit against BCI, alleging tortious interference with existing business and

---

[1] Under the Randolph Sheppard Act, the United States Government "provides priority to blind persons when evaluating bids for the provision of food services on federal property." Doc. No. 78, p. 1; 20 U.S.C. § 107.

prospective economic advantage. *Id*. However, Cantu's dispute with Swanson,[2] and subsequently Mr. Robert Brown,[3] entered mandatory arbitration pursuant to the parties' contract. Doc. No. 60, ¶ 4. Therefore, this Court stayed proceedings pending the arbitration's resolution. Doc. No. 36.

During the stay, the Court prohibited either party from "filing any motions, serving any discovery, or otherwise seeking relief as between them . . . until the Court order[ed] otherwise in Oklahoma." Doc. No. 58, p. 1. On October 22, 2015, the arbitration concluded in a final judgment awarding Cantu $4,197,748.00 in lost profits, plus attorneys' fees and costs. Doc. No. 71–3, p. 17.

Judge Goodwin confirmed the award on December 31, 2019. Doc. Nos. 71–3, 71–4. Accordingly, the Court lifted the stay of proceedings on Cantu's suit against BCI on March 6, 2020. Doc. No. 67. On April 7, 2020, Cantu filed a Motion for Leave to File an Amended Complaint, Doc. No. 71, and the Court entered an Order on Cantu's motion on July 23, 2020. Doc. No. 78, p. 1.

The Court granted in part and denied in part Cantu's motion, denying leave to amend to include a claim for conversion, unjust enrichment, constructive trust, and from seeking lost profits on its tortious interference claim. Doc. No. 78, pp. 10–11. Cantu's Motion to Reconsider asks the Court to reevaluate its conclusion regarding its lost profits arbitration

---

[2] Cantu's dispute with Swanson was settled and thus voluntarily dismissed on December 16, 2013. Doc. No. 20; 71–3, p. 18.
[3] The Oklahoma Department of Rehabilitation Services ("ODRS"), serving as the state licensing agency, removed Swanson from his role as the blind licensed manager, and replaced him with Mr. Robert Brown between 2012 and 2013. Doc. No. 78, p. 2.

judgment against Mr. Brown. Doc. No. 80, p. 1. Cantu argues that the Court erred when it explained that

> if Plaintiff were to prevail at trial, Plaintiff could not recover additional monetary relief for lost profits it would have realized in 2014 and 2015 based upon Defendant's alleged tortious conduct. Accordingly, the Court will not grant Plaintiff leave to amend its Complaint to include a claim for tortious interference, conversion, unjust enrichment, or constructive trust, to the extent those claims seek relief in the form of lost profits from Mr. Brown's termination of Plaintiff's contract. Those amendments are futile because they would be subject to dismissal on the ground that they seek a double recovery of Plaintiff's lost profits in 2014 and 2015—profits that, as noted above, Plaintiff already recovered in its arbitration award. See Doc. No. 71–5, ¶¶ 51–58.

Doc. No. 78, p. 7.

"[A]ny order […] which adjudicates fewer than all the claims […] may be revised at any time before the entry of judgment." *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (quoting Fed. R. Civ. P. 54(b)). "[A] district court always has the inherent power to reconsider its interlocutory rulings before final judgment is entered." *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243 (10th Cir. 2007) (citing *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007)). A district court in the Tenth Circuit even stated that "[a] district court can use whatever standard it wants to review a motion to reconsider an interlocutory order […]." *Anderson Living Trust v. WPX Energy Production, LLC*, 312 F.R.D. 620, 647 (D.N.M. 2015). Upon review, the Court finds as follows.

The issue before the Court is whether an arbitration award against one party precludes a plaintiff from pursuing the same judgment in a different cause of action in federal court against another party.

3

Cantu states that its judgment against Mr. Brown does not extinguish its claim against BCI for the same damages because "while a party may not obtain double recovery, election of remedies is not required." Doc. No. 80, p. 3 (quoting *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180 (10th Cir. 2008)). Cantu argues that BCI and the Court misunderstood the distinction between holding multiple parties liable for a judgment and double recovery. *Id.* BCI counters that Cantu's arbitration judgment satisfies its claim for lost profits in 2014 and 2015, and therefore, the Court's Order denying Cantu's pursuit of lost profits properly prevents Cantu from double recovery. Doc. No. 81, p. 4.

As Cantu notes, the parties' dispute boils down to whether a distinction exists between recovery and judgment. Doc. No. 80, p. 2. BCI conflates recovery and judgment when it argues that "[a]ny award […] against BCI for the very same damages and very same injury covered by Plaintiff's prior recoveries would provide Plaintiff with an inappropriate double recovery." Doc. No. 81, p. 2. However, a judgment for a plaintiff imposes liability on the defendant, but recovery does not occur until the defendant "satisf[ies] … the judgment [,] which eliminates any further claim." *Biles v. Harris*, 521 P.2d 884, 890 (1974). In *Biles v. Harris*, the court explained that

> taking a judgment against one defendant does not result in a merger or extinction of the cause of action […] [Plaintiff] can take as many judgments as he wishes against separate parties for all or any part of the same damage as long as he does not satisfy one of them.

*Id.* at 887.

"When [a] claimant thus brings consecutive actions against different persons liable for the same harm, the rendition of the judgement in the first action does not terminate the

4

claims against other persons who may be liable for the loss in question." Restatement (2d) of Judgments § 49 (1982). Plaintiffs are not precluded from holding multiple defendants liable for the same damage, but rather "*payment* by one obligor extinguishes the liability of both." *Conklin v. Comm'r*, 897 F.2d 1027, 1029 (10th Cir. 1990) (citing Restatement (2d) of Judgments § 50(2) cmt. c ("A payment by one person liable for a loss reduces pro tanto the amount that the injured person is entitled to receive from other persons liable for the loss.")). The Tenth Circuit recognized this principle in *Conklin*, when the Internal Revenue Service ("IRS") pursued payment from a husband and a wife on a tax deficiency. *Conklin,* 897 F.2d at 1029. The Court explained that the IRS could pursue the wife, husband, or both for liability of a tax deficiency, but the wife's payment extinguished liability for each party. *Id.* Therefore, while a plaintiff is precluded from double recovery, a plaintiff is not precluded from pursuing *judgment* for the same damage from multiple defendants. Here, Cantu received judgment on a breach of contract claim in arbitration against Brown, but until Cantu is paid on that judgment, it has not "recovered" and its tortious interference claim for lost profits is viable against BCI.

Additionally, claim preclusion, or *res judicata*, does not bar Cantu's claim against BCI either. Claim preclusion prohibits the same parties, or parties in privity, from litigating the same action to judgment on the merits, however, "where the causes of actions are different and the parties are not identical, claim preclusion is inapplicable." *Carris v. John R. Thomas & Assocs., P.C.*, 896 P.2d 522, 527 (Okla. 1995) (quoting *Erwin v. Frazier,* 786 P.2d 61, 64 (Okla.1989) (explaining that when the causes of actions differ, such as "one arising from a divorce [and] […] one […] in negligence," res judicata is improper)). In

5

*Carris*, an arbitration award against one defendant for breach of contract did not preclude the plaintiff from subsequently pursuing its tort claims against another defendant. *Id.* at 526. Similarly, here, Cantu succeeded on its breach of contract claim in arbitration, but its tort claims against BCI have not been litigated.

BCI also argues that "the Tenth Circuit warned against a double recovery of damages on alternative theories in the same award/judgment in *Specialty Beverages*." Doc. No. 81, p. 7. While the court in *Specialty Beverages* expressed concern for double recovery, the court also explained the distinction in allowing double recovery and permitting a plaintiff to pursue judgment on alternative legal theories. 537 F.3d at 1180. The Court reasoned that a non-resident seller of beer could pursue both fraud and breach of contract claims against the brewer, but it cautioned against allowing the non-resident seller to double recover, or receive two different payments, for the same harm. *Id.* Thus, the Court remanded the district court's grant of judgment as a matter of law to the district court, permitting the parties to proceed to the merits of the seller's fraud claim. *Id.* at 1182-83.

In its Order dated July 23, 2020, Doc. No. 78, this Court erred in its determination that Cantu could not proceed on its tort claims for lost profits in 2014 and 2015 because it failed to recognize the distinction between Cantu's ability to pursue multiple theories to judgment and Cantu's ability to double recover. Recovery does not occur until the defendant "satisf[ies] … the judgment" in the form of payment, *Biles*, 521 P.2d at 890, and while Cantu received an award of judgment, its judgment is still unsatisfied. For this reason, Cantu's pursuit of lost profits in 2014 and 2015 arising from BCI's alleged tortious interference should not be barred.

The portion of the prior order denying Cantu leave to amend to include the tortious interference claim pursuing lost profits in 2014 and 2015 is hereby vacated, and thus, Cantu is permitted to seek lost profits against BCI.

**IT IS SO ORDERED** on this 19th day of October 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE